IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jacob W. Bowman,              :
          Appellant      :
                       :
         v.             :
                       :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :  No. 191 C.D. 2025
Bureau of Driver Licensing     :  Submitted: May 14, 2026


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE STELLA M. TSAI, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                         FILED: August 12, 2026


Jacob W. Bowman (Licensee) appeals from the Adams County Common Pleas Court's (trial court) January 28, 2025 order denying his Motion for Reconsideration of the trial court's January 17, 2025 order that dismissed his appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) 18-month suspension of his driving privileges pursuant to Section 1547(b) of the Vehicle Code,[1] commonly known as the Implied Consent Law, and reinstating his license suspension.[2] Licensee presents one issue for this

---

[1] 75 Pa.C.S. § 1547(b).

[2] "Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal." *Provident Nat'l Bank v. Rooklin*, 378 A.2d 893, 897 (Pa. Super. 1977); *see also Dous v. Dep't of Transp. Bureau of Driver Licensing* (Pa. Cmwlth. No. 415 C.D. 2023, filed Sept. 19, 2024); *In re Jackson* (Pa. Cmwlth. No. 842 C.D. 2022, filed Oct. 30, 2023). This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Dous* and *Jackson* are cited for their persuasive value. However, because Licensee filed his appeal on February 11, 2025, which is within 30 days of the trial court's January 17, 2025 order, this Court treats it as an appeal therefrom.

Court's review: whether a self-propelled wheelchair is a vehicle for purposes of the Implied Consent Law. After review, this Court reverses.

On September 1, 2024, at 1:09 a.m., Pennsylvania State Police Trooper Damian Moran (Trooper Moran) was dispatched to a single vehicle accident on Waynesboro Pike near Harbaugh Valley Road, Hamiltonban Township, Adams County, Pennsylvania. While traveling to the accident scene, Trooper Moran received information that an individual at the scene got into a wheelchair and was wheeling himself away from the scene with an ambulance following him. Trooper Moran arrived at the scene approximately 30 minutes after his dispatch and initially observed an abandoned vehicle. Trooper Moran subsequently observed Licensee in a wheelchair traveling in front of an ambulance on Old Waynesboro Road, approximately one quarter mile from the accident scene. Trooper Moran determined the wheelchair was a manual wheelchair that Licensee propelled with his arms.

Trooper Moran stopped Licensee and observed there was an odor of alcohol emanating from his breath and his eyes were bloodshot. Trooper Moran believed Licensee was under the influence of alcohol and a controlled substance. Licensee repeatedly denied driving the abandoned vehicle and being involved in an accident. Trooper Moran determined the vehicle was registered to Licensee, no other individuals were present at the accident scene, and the vehicle was adapted for use by a disabled person based on hand controls on the steering wheel. Trooper Moran did not know what time the accident occurred or when Licensee's vehicle was discovered. Trooper Moran placed Licensee under arrest and transported him back to the accident scene. Trooper Moran observed Licensee was missing a shoe and was shirtless. Outside of Licensee's vehicle, Trooper Moran observed a t-shirt and a shoe identical to the shoe Licensee was wearing next to a half empty bottle of Jägermeister and another bottle of alcohol.

2

Trooper Moran read Licensee the relevant portions of DOT's DL-26 Form[3] verbatim and requested that Licensee submit to a chemical test of his blood. Licensee did not respond. Trooper Moran asked Licensee several times if he understood the warnings read to him. Licensee refused to acknowledge anything. Trooper Moran informed Licensee that a lack of response constituted a refusal of the blood test. At no time did Licensee give Trooper Moran an affirmative response that he would submit to a blood test. Trooper Moran recorded Licensee's failure to respond as a refusal.

On September 12, 2024, DOT notified Licensee that his driver's license would be suspended for 18 months due to the chemical testing refusal, effective October 17, 2024. On October 7, 2024, Licensee appealed to the trial court. Following a hearing on January 17, 2025, the trial court dismissed Licensee's appeal and reinstated the suspension of his driving privileges. On January 27, 2025, Licensee filed the Motion for Reconsideration. On January 28, 2025, the trial court denied Licensee's Motion for Reconsideration. On February 11, 2025, Licensee appealed to this Court.[4]

On February 12, 2025, the trial court ordered Licensee to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of

___

[3] DOT's DL-26 Form sets forth the prescribed language of the warning to be given to motorists arrested for Driving Under the Influence (DUI) that explains the penalties for refusing chemical tests. Law enforcement use the DL-26 Form to satisfy the requirements of Section 1547(b) of the Vehicle Code during DUI arrests.

[4] This Court's "review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Chojnicki v. Dep't of Transp., Bureau of Driver Licensing*, 332 A.3d 883, 886 n.2 (Pa. Cmwlth. 2025) (quoting *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017)). "An abuse of discretion occurs where in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Cmwlth. 2015) (quotation marks omitted).

Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement).[5]  Licensee timely

filed his Rule 1925(b) Statement.  On April 11, 2025, the trial court filed its opinion

pursuant to Rule 1925(a) , wherein it stated:

> Wherefore, following a thorough review . . . , the [trial c]ourt finds that the wheelchair utilized by [Licensee] in this case, **a human-powered wheelchair**, **meets the definition of a self-propelled wheelchair under the Vehicle Code and therefore is excluded from the definition of** "**vehicle**" under the Vehicle Code.  As such, the [] Implied Consent Law does not apply to [Licensee] as he was not operating a "vehicle" upon a Pennsylvania highway when Trooper Moran had contact with him.
>
> The [trial c]ourt respectfully requests that [this Court] reverse th[e trial c]ourt's [o]rder dated January 17, 2025, and rescind the license suspension entered against [Licensee].

Trial Ct. Op. at 8-9 (emphasis added).

> Initially, this Court
>
> will only sustain a suspension of a licensee's operating privilege under the Implied Consent Law if DOT establishes[:] [] (1) the driver was arrested for driving under the influence by a police officer with reasonable grounds to believe the licensee was operating a **vehicle**[6] while under the influence of alcohol or a controlled substance; (2) the driver was asked to submit to a chemical test; (3) the driver refused to take the chemical test; and

---

[5] On February 13, 2025, the trial court filed an amended order directing Licensee to file a Rule 1925(b) Statement, which included specific directions relative to serving the trial court judge.

[6]     Section 1547(a) [of the Vehicle Code, 75 Pa.C.S. § 1547(a),] was revised in 2004 to twice delete the word "*motor*" prior to the word "*vehicle*."   By this amendment, the [l]egislature effectively established that a person who operates a "vehicle," as defined in the Vehicle Code, has implicitly given his consent to submit to chemical testing.

*Bilka v. Dep't of Transp., Bureau of Driver Licensing*, 92 A.3d 1253, 1258 (Pa. Cmwlth. 2014).

4

(4) the driver was specifically warned that refusing the test would result in the revocation of his or her driver's license.

*Cornish v. Dep't of Transp., Bureau of Driver Licensing*, 323 A.3d 114, 118-19 (Pa. Cmwlth. 2024) (emphasis added).

Here, it is uncontested that DOT could not meet its burden of proving that Licensee had been driving the vehicle involved in the accident while under the influence of alcohol or controlled substance because Trooper Moran truthfully testified that he did not know when the accident involving Licensee's vehicle occurred. As it is possible that Licensee consumed the half bottle of Jägermeister after his accident, DOT concedes that it did not satisfy its burden. Accordingly, the only issue before this Court is whether Licensee's wheelchair is a vehicle within the meaning of the Implied Consent Law.

This issue is one of first impression. Licensee asserts that his wheelchair was *self-propelled* and a *self-propelled wheelchair* is not a vehicle for purposes of the Implied Consent Law. DOT rejoins that because Licensee was wheeling himself down the highway in an unpowered wheelchair using his arms as the sole means of propulsion, his wheelchair was not a "self-propelled wheelchair." Section 102 of the Vehicle Code, 75 Pa.C.S. § 102; *see also* Merriam-Webster Dictionary definition of *self-propelled* ("containing within itself the means for its own propulsion[;] a *self-propelled* vehicle").[7]

Section 102 of the Vehicle Code defines ***motor vehicle*** as "[a] vehicle which is self-propelled[,] except an electric personal assistive mobility device or a vehicle which is propelled solely by human power[,]" and a ***vehicle*** as

> [e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks. **The term does not include a self-propelled wheelchair** or an

---

[7] https://www.merriam-webster.com/dictionary/selfpropelled (last visited Aug. 11, 2026).

electrical mobility device operated by and designed for the exclusive use of a person with a mobility-related disability.

75 Pa.C.S. § 102 (emphasis added).

The Implied Consent Law provides:

**General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle[, excluding "a self-propelled wheelchair or an electrical mobility device operated by and designed for the exclusive use of a person with a mobility-related disability,"] in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection[s] 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa.C.S. § 1547(a) (quoting 75 Pa.C.S. § 102).

DOT insists that *self-propelled* refers to the wheelchair itself, and a wheelchair propelled solely by human power is not a self-propelled wheelchair. Therefore, DOT maintains that a wheelchair propelled solely by human power is not excluded from the Implied Consent Law. However, accepting DOT's interpretation, the Implied Consent Law would apply to a person who drives a wheelchair that is propelled solely by human power, but not to a person who drives a wheelchair that is propelled by the wheelchair itself. This interpretation would lead to an absurd and unreasonable result. The law is well established that "[this Court] presume[s] the General Assembly did not intend a result that is "absurd, unreasonable, or impossible to execute." *MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855, 861 (Pa. 2019) (quoting *In re Concord Twp. Voters*, 119 A.3d 335, 341-42 (Pa. 2015)). Accordingly, because

6

"it would be absurd and unreasonable . . . for this Court to construe [the above] language [using such an] interpretation[][,] 1 Pa.C.S. § 1922(1), (2)[,]" *MERSCORP, Inc.*, 207 A.3d at 878, this Court is compelled to hold Licensee's wheelchair is not a vehicle within the meaning of the Implied Consent Law.

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

Jacob W. Bowman,              :
          Appellant       :
                       :
        v.              :
                       :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :   No. 191 C.D. 2025
Bureau of Driver Licensing     :

## O R D E R

AND NOW, this 12th day of August, 2026, the Adams County Common Pleas Court's January 17, 2025 order is reversed.

_____
ANNE E. COVEY, Judge